IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COOK COUNTY, THE SHERIFF OF COOK | ) | |
| COUNTY, THE VILLAGE OF ROBBINS, | ) | |
| Robbins Police Officers DETECTIVE D. | ) | |
| KIMBLE, DETECTIVE SERGEANT T. | ) | |
| FRANKLIN, HENDERSON, CAREY, and | ) | |
| COMMANDER D. HATCHETT, | ) | |
| Cook County Sheriffs T. SHADER, | ) | |
| GLEASON, D. GRAY, F. D'ORONZO, | ) | |
| F.NOWACZYK, and C. MCGUIRE, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## **COMPLAINT**

NOW COMES Plaintiff, ROBERT HILL, by his attorneys, LOEVY & LOEVY, and

complaining of Defendants COOK COUTY, THE SHERIFF OF COOK COUNTY, THE

VILLAGE OF ROBBINS, ILLIONIS (the "Entity Defendants"), Robbins Police Officers

DETECTIVE D. KIMBLE, DETECTIVE SERGEANT T. FRANKLIN, HENDERSON,

CAREY, and COMMANDER D. HATCHETT, and Cook County Sheriff Officers T. SHADER,

GLEASON, D.GRAY, F.D'ORONZO, F. NOWACZYK, and C. MCGUIRE (the "Law

Enforcement Defendants"), states as follows:

### **Introduction**

1.      Plaintiff ROBERT HILL spent more than 10 years wrongfully imprisoned for the

armed robbery of Frank's Liquor Store in Robbins, Illinois on November 25, 2005. Defendants

alleged that Hill was the getaway driver for Darion Nance and Carnell Tyler during the robbery

that resulted in the wounding of the store owner, Fakhri Elayyan, and the death of his daughter, Ghada Elayyan. Mr. Hill had nothing to do with this horrendous crime. He is completely innocent.

2.     Plaintiff's wrongful conviction rested solely on fabricated evidence and false testimony that the Law Enforcement Defendants secured through manipulation, coercion, and other improper investigative techniques. Mr. Hill has never stopped fighting for his freedom. He now brings this lawsuit seeking redress for the damages he has, and continues, to suffer.

## Jurisdiction and Venue

3.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights as secured by the United States Constitution, as well as the deprivation of rights under Illinois state law.

4.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C § 1391(b) because the parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## Parties

5.     Plaintiff, ROBERT HILL, at all times relevant hereto, was a citizen of Illinois and a resident of the City of Robbins, Illinois.

6.     Defendant VILLAGE OF ROBBINS is an Illinois Municipality, which employs or employed the Robbins Police Officer Defendants at the time of the events giving rise to this suit.

7.     The County of Cook is a duly constituted county and body politic, located in the State of Illinois.

8.     Defendant THOMAS DART is the SHERIFF OF COOK COUNTY, and was the Sheriff throughout the relevant time period. In his official capacity he is in charge of the Cook County Sheriff's Police Department. By law, custom, and/or delegation, he has policymaking authority over the Cook County Sheriff's Police Department for the actions at issue. He is responsible for ensuring that the policies and practices of the Cook County Sheriff's Police Department comply with federal and state requirements for homicide investigations. Dart is sued in his official capacity for the challenged actions and omissions.

9.     At all times relevant hereto, Defendants KIMBLE, FRANKLIN, HENDERSON, CAREY, and HATCHETT were law enforcement officers employed by the Robbins Police Department, acting under the color of law and within the scope of their employment with the Village of Robbins, Illinois.

10.     At all times relevant hereto, Defendants SHADER, GLEASON, GRAY, D'ORONZO, NOWACZYK, and MCGUIRE were law enforcement officers employed by the Cook County Sheriff's Police Department, acting under the color of law and within the scope of their employment with Cook County, Illinois.

**Factual Allegations**

11.     On the night of November 25, 2005, two men robbed Frank's Liquor Store, in Robbins, Illinois which is just a few blocks from the 139th Street housing development where the men both lived.

12.     The two men concealed their identities and walked to the store, went inside, and shot the store owner, Fakhri Elayyan, wounding him, and then turned the gun towards his daughter, Ghada Elayyan, fatally shooting her. After grabbing the cash register, the two men then

fled on foot back towards the 139th Street housing development where they split the money between themselves.

13.     Plaintiff was not involved in this horrible crime, and had nothing to do with it.

14.     The Robbins Police Department responded to Frank's Liquor Store on the night of November 25, 2005. Defendant Detective Sergeant KIMBLE was initially assigned as lead detective and began investigating the case, along with Defendants FRANKLIN, HENDERSON, CAREY, and HATCHETT.

15.     By the following morning, the Robbins Police Department claimed that they started receiving what they claimed were "anonymous phone calls" from citizens who provided tips about the murder. Rather than do the police work necessary to properly solve the crime, Defendant Sergeant KIMBLE and Defendants FRANKLIN, HENDERSON, CAREY, and HATCHETT seized upon one such "tip" and focused their attention on gathering evidence through manipulation and coercion to reach their end goal of making the case fit a presupposed narrative. In doing so they selectively chose to document and pursue only those "tips" that fit with their narrative; namely, that two men, Darian Nance and Carnell Tyler, committed the robbery and shooting, and that Robert Hill was their get-away driver. Defendants failed to document or otherwise suppressed phone calls and/or other witness statements that were exculpatory and failed to record the names of key witnesses.

16.     Moreover, Defendant KIMBLE claimed in a police report that Carnell Tyler walked into the Robbins Police Station the day after the shooting, requested to sleep in a cell for the night, and voluntarily provided a full confession to the crime while he was there. In his confession, as alleged by Defendant KIMBLE, Tyler stated that he took part in the felony murder, and implicated Darian Nance as the shooter. However, Tyler made no mention of Robert

Hill in his alleged confession or of any "get-away driver." Tyler stated that he and Nance committed the crime and ran back to the 139th Street housing development.

17.     Mr. Hill was interviewed by Defendants at his mother's home on November 27, 2005. Mr. Hill answered the officers' questions truthfully and was not arrested.

18.     Also interviewed around that time was a woman, Tammie Chiestder, who unwittingly entered the store at the time of the robbery. Ms. Chiestder told police that she quickly ran out and hid in the parking lot. She stated that there were no other cars in the parking lot.

19.     Despite Tyler's alleged confession to Defendant KIMBLE, the Felony Review Division of the Cook County State's Attorney's Office interviewed Tyler on November 28, 2005, and released him from custody immediately following the interview.

20.     Undeterred, Defendants pursued their theory of the crime and coerced two residents of the 139th Street housing development to provide false statements mirroring the police version of events. Alleged witnesses Terry Holloway and Carlos Tyler both had pending criminal cases at the time Defendant KIMBLE and FRANKLIN, HENDERSON, CAREY, and HATCHETT obtained their statements from Holloway and Tyler that Defendants knew to be false. Both alleged witnesses received consideration, known and still unknown, in exchange for their statement.

21.     Following the statements of Holloway and Carlos Tyler, which falsely implicated Mr. Hill as a participant in the crime, the Robbins Police Department, including Defendant KIMBLE and FRANKLIN, HENDERSON, CAREY, and HATCHETT, arrested Mr. Hill on December 6, 2005. Darian Nance and Carnell Tyler were likewise arrested on that date by the Robbins Police Department.

22.     In further pursuit of their false theory—and working quickly to close the case—Defendants threatened Terry Holloway and Carlos Tyler that they could be charged as co-conspirators in the crime, and thereby coerced them to testify in front of a grand jury to the police version of events. Both alleged witnesses provided statements to the Grand Jury which implicated Robert Hill.

23.     On December 8, 2005, Carnell Tyler was charged with 1st degree murder, attempted 1st degree murder, and armed robbery. Despite Tyler pointing the finger at Nance as the shooter, Nance was released without charges by the Felony Review Division of the Cook County State's Attorney's Office. Robert Hill was similarly released without charges on that date—as there was no credible evidence that he had anything to do with the crime.

24.     During the investigation by Defendant Sergeant KIMBLE and Defendants FRANKLIN, HENDERSON, CAREY, and HATCHETT, the Defendants conducted canvass interviews and searched for physical evidence, but either purposefully failed to document the evidence or documented and later destroyed the evidence, all of which was favorable to Plaintiff, including the fact that no forensic evidence was discovered in Mr. Hill's truck (or anywhere else) that linked him by any means to the shooting and robbery.

25.     As things stood, by October of 2007, nearly two years after the crime had occurred, Carnell Tyler was the only person to have been arrested and charged for the shooting at Frank's Liquor Store and had been sitting in Cook County Jail awaiting trial since December 8, 2005.

26.     Defendants Cook County Sheriff Officers SHADER, GLEASON, GRAY, D'ORONZO, NOWACZYK, and MCGUIRE became involved in the stalled investigation in or around October 22, 2007. At that time, Defendants SHADER, GLEASON, GRAY,

D'ORONZO, NOWACZYK, and MCGUIRE knew that police reports created by Village of

Robbins police officers were "so lacking in basic information that they were essentially useless

to a prosecutor," yet the police reports documenting the investigation at issue in this matter were

not questioned or further investigated; Defendants SHADER, GLEASON, GRAY, D'ORONZO,

NOWACZYK, and MCGUIRE relied on the reports and further fabricated evidence and coerced

witnesses into forming to the narrative created by Defendant KIMBLE.

27.     Defendants SHADER, GLEASON, GRAY, D'ORONZO, NOWACZYK, and

MCGUIRE arrested Robert Hill, without probable cause to do so, on October 29, 2007. This

time, Mr. Hill agreed to submit to a polygraph examination in order to once and for all clear his

name. Mr. Hill was told that if he answered the polygraph examination truthfully, he would not

be arrested again for the crime at Frank's Liquor Store. Specifically, Hill was told that he would

be immunized from arrest and prosecution for the offense if he would waive his Fifth

Amendment Right and submit to and pass a polygraph examination. Relying on the

representation of a cooperation agreement, Mr. Hill took the polygraph examination and

consented to a full interrogation in doing so.

28.     Defendant GRAY administered the polygraph examination and concluded that

Mr. Hill answered truthfully. Mr. Hill was released from custody without charges.

29.     Knowing that there was absolutely no credible evidence connecting Robert Hill to

the crime, Defendants SHADER, GLEASON, GRAY, D'ORONZO, NOWACZYK, and

MCGUIRE worked with an informant, Keyonte McDowell, to obtain fabricated evidence

relating to the November 2005 robbery and shooting. The informant received consideration for

his cooperation, both known and still unknown, including a reduced charge and 2 years'

probation after admitting his guilt in a brutal attempted murder case.

30.     On November 26, 2007, and with no other evidence gathered that supported any amount of probable cause against Plaintiff, and in breach of the cooperation agreement, Plaintiff was arrested and charged with his alleged part in the felony-murder.

31.     The constitutional violations that Mr. Hill alleges were the proximate cause of his wrongful conviction were not anomalies for either the Village of Robbins Police Department or the Cook County Sheriff's Police Department.

32.     The Village of Robbins Police Department has been the subject of multiple complaints of constitutional violations, but no action was or since has been taken to remedy the problems within the Department. For example, members of the Robbins Police Department were implicated in Section 1983 cases involving similar claims as alleged here: *Ridgner v. Robbins et al.*, Case No. 00-cv-4441 (N.D. Ill.); *Morris v. Robbins et al.*, Case No. 01-cv-6799 (N.D. Ill.), wherein Defendant Kimble was accused of falsifying charges against an arrestee; *Jackson v. Robbins et al.*, Case No. 01-cv-8947 (N.D. Ill.) and *Richmond v. Kimble*, Case No. 04-cv-1091 (N.D. Ill), wherein Defendant Kimble was accused of arresting a citizen without probable cause. The Village of Robbins' failure to respond to these Complaints, as well as citizen complaints that did not result in a federal lawsuit, led officers in the Village of Robbins to believe that they could act with impunity during homicide investigations.

33.     In addition, the Cook County Sheriff's Department was on notice, particularly during the time of the investigation at issue in this matter, that the Robbins Police Department routinely violated citizens' constitutional rights during police investigations. For example, the Cook County Sheriff's Department later issued public statements that the Robbins police reports were so lacking in basic information that they were essentially useless to a prosecutor, that the evidence room at the Robbins Police Department was a mess, and that the Sheriff's Department

had to actually explain the law to officers as it related to arresting offenders. The Sheriff's Department actually referred to Robbins as a "dysfunctional, screwed-up place."

34. Yet knowing of this reputation at the time of the events giving rise to this lawsuit, SHADER, GLEASON, GRAY, D'ORONZO, NOWACZYK, and MCGUIRE relied on the investigation put forth by Defendants KIMBLE, FRANKLIN, HENDERSON, CAREY, and HATCHETT, and furthered that investigation with unconstitutional tactics of their own, for which they were not supervised or disciplined for, and in furtherance of the same goal: arresting and prosecuting Robert Hill for a crime he did not commit.

35. The law enforcement agencies' and supervisors' failures to discipline Defendants here were thus not the first time they failed to discipline officers who deprived citizens of their constitutional right to a fair trial by withholding and suppressing exculpatory and impeachment evidence and by fabricating evidence against criminal defendants.

36. The Entity Defendants' failure to train and discipline officers regarding the improper investigation techniques encourages the officers to deprive citizens of constitutional right to fair trials by withholding and suppressing exculpatory and impeachment evidence and by fabricating evidence against criminal defendants.

37. The Entity Defendants' records concerning their failure to train and discipline officers regarding officers suppressing exculpatory and impeachment evidence and fabricating evidence illustrates their deliberate indifference to the rights of individuals, including the rights of citizens who, like Plaintiff Robert Hill, were unjustifiably targeted by the police and, as a result, wrongfully convicted.

**Damages**

38.    Plaintiff spent 5 years at the Cook County Jail awaiting trial. During those 5 years he was housed in maximum-security divisions and was in a constant state of alert in an unstable environment.

39.    As a result of Defendants' misconduct, Robert Hill was found guilty at a bench trial of first-degree murder, attempted first degree murder, and two counts of armed robbery. He was sentenced on May 16, 2013 to consecutive terms of 40 years and 30 years plus two concurrent 25-year terms in prison.

40.     Co-defendant Darian Nance testified against Robert Hill, and in exchange for his cooperation, Nance pleaded guilty to armed robbery and received a recommended sentence of twenty-three years to be served at 85% time. Although Defendants alleged that Carlos Tyler and Terry Holloway were coconspirators in that they pocketed money from the robbery, they were never indicted after testifying against Robert Hill.

41.    Robert Hill was incarcerated for more than 10 years in harsh conditions for a crime that he did not commit. He was threatened and attacked by both guards and inmates, suffered physical injuries, and lived in constant trepidation. He must now readjust himself to the world outside prison, and attempt to piece together his life that was taken away from him for over a decade.

42.    Additionally, the emotional pain and suffering caused by the Defendants' misconduct has been, and continues to be, substantial. During his incarceration, he was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. Mr. Hill missed out on the ability to share holidays, births, funerals, and other life events with loved ones; he was ripped from his wife and

5 children, the hardship of which caused his family to disintegrate; and he lost the fundamental

freedom to live one's life as an autonomous human being.

43.     Through it all, Robert Hill never ceased fighting for his freedom. On December

17, 2017, the Circuit Court of Cook County dismissed the indictment that had been placed

against him, stating, in part, that "when the totality of circumstances surrounding the government

misconduct is such that it offends the basic tenets of fair play and justice, dismissal of the

indictment with prejudice is proper."

44.     Robert Hill obtained his freedom, yet as a result of the foregoing, he has suffered

tremendous damage, including but not limited to physical harm, mental suffering, and loss of a

normal life, all proximately caused by Defendants' misconduct.

## LEGAL CLAIMS

### COUNT I – 42 U.S.C. § 1983
### Due Process

45.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

46.     As more fully described above, the Law Enforcement Defendants, while acting

individually, jointly, and in conspiracy with one another, as well as under color of law and within

the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial by

withholding and suppressing exculpatory and impeachment evidence and by fabricating evidence

against Plaintiff.

47.     In the manner described more fully above, the Law Enforcement Defendants

deliberately withheld exculpatory evidence, and fabricated false reports, false testimony, and

other evidence. The Law Enforcement Defendants also improperly coerced statements that they

later claimed were self-incriminating on the part of Plaintiff. The Law Enforcement Defendants

further breached the cooperation agreement entered into by and between the Defendants and

Plaintiff. Absent all of this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

48.    The Law Enforcement Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

49.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with willful indifference to Plaintiff's constitutional rights, and in total disregard for the truth.

50.    As a result of the misconduct of the Law Enforcement Defendants described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**COUNT II – 42 U.S.C. § 1983**
**Unlawful Pretrial Detention**

51.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

52.    As described more fully above, the Law Enforcement Defendants individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights.

53.    The Law Enforcement Defendants accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so, in violation of his rights secured by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment.

54.     In so doing, the Defendant Officers caused Plaintiff to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause. The judicial proceedings were instituted and continued maliciously, resulting in injury to Plaintiff.

55.     As a result of the misconduct of the Law Enforcement Defendants described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

### COUNT III—42 U.S.C. § 1983
### Conspiracy

56.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

57.     All of the individual Law Enforcement Defendants and other co-conspirators, known and not yet known to Plaintiff, reached an agreement amongst themselves to deprive Plaintiff of material exculpatory and impeachment evidence and information to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges; to fabricate evidence; to manipulate witnesses; and to conceal their misconduct, all in violation of Plaintiff's constitutional rights, as described above.

58.     In this manner, the Law Enforcement Defendants acting in concert with other known and unknown co-conspirators, conspired to accomplish an unlawful purpose by an unlawful means.

59.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

60.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

61.     As a result of the misconduct of the Law Enforcement Defendants described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

### COUNT IV—42 U.S.C § 1983
### Failure to Intervene

62.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

63.     In the manner described above, one or more of the individual Law Enforcement Defendants and other unknown employees of the Robbins Police Department and/or Cook County Sheriff's Department, stood by without intervening to prevent the alleged constitutional violations occurring against Plaintiff, despite having an opportunity to do so.

64.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

65.     As a result of the misconduct of the Defendant Officers described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

### COUNT V – 42 U.S.C. § 1983
### Municipal and Supervisory Liability

66.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

67.     As described in the preceding paragraphs, the misconduct described in Counts I-IV was undertaken pursuant to the policy and practice of the Village of Robbins and the Cook County Sheriff's Department such that each Entity Defendant is also liable, in that:

> a.     As a matter of both policy and practice, each law enforcement agency and its supervisors encourage, and is thereby the moving force behind, the very type of misconduct at issue in Counts I-IV by failing to adequately train,

supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, each law enforcement entity and its supervisors facilitate the very type of misconduct at issue in Counts I-IV by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading the Village of Robbins Police Officers and Cook County Sheriff Officers to believe their actions will never be meaningfully scrutinized. Accordingly, in that way, each law enforcement entity is directly encouraging future constitutional violations to take place in homicide investigations, such as that which Plaintiff complains of;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of each law enforcement entity violate the constitutional rights of individuals in a manner similar to that alleged by Plaintiff in Counts I-IV on a regular basis, yet each law enforcement entity investigates officer misconduct and makes findings of wrongdoing in a disproportionately small number of cases.

68.     As a result of the Entity Defendants policies and practices as described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**COUNT VI – Illinois State Law Claim**
**Intentional Infliction of Emotional Distress**

69.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

70.     In the manner described more fully above, the Law Enforcement Defendants engaged in extreme and outrageous conduct.

71.     The Law Enforcement Defendants either intended that their conduct would cause severe emotional distress to Plaintiff or knew that there was a high probability that their conduct would cause severe emotional distress to Plaintiff.

72.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

73.     As a proximate result of this misconduct, undertaken within the scope of Law Enforcement Defendants' employment, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

## COUNT VII – Illinois State Law Claim
### Malicious Prosecution

74.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

75.     All of the Law Enforcement Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Plaintiff. All such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

76.     The Defendants accused Plaintiff of felony-murder and attempted murder, knowing that he was innocent of the crimes. The Law Enforcement Defendants fabricated evidence, manipulated witnesses, and withheld material exculpatory evidence. The Law Enforcement Defendants knowingly made false statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings against Plaintiff. The Law Enforcement Defendants breached a cooperation agreement entered into with Plaintiff, and

Plaintiff's indictment was dismissed on the basis that he passed a polygraph examination administered by Defendants.

77.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

78.     As a proximate result of this misconduct, undertaken within the scope of Law Enforcement Defendants' employment, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

### COUNT VIII – State Law Claim
### Entity Defendants' Breach of Duty in Hiring, Training, and Supervising – Negligence

79.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

80.     The Entity Defendants at all times relevant to the events described herein had a duty to exercise due care in hiring law enforcement officers, and had a duty to properly train, supervise, and discipline law enforcement officers in relation to their duties, including the duties involved in conducting homicide investigations.

81.     The Entity Defendants breached those duties by failing to exercise due care in hiring and then failing to properly train, supervise, and discipline the law enforcement officers who used unconstitutional techniques in homicide investigation, including the investigation at issue in this Complaint.

82.     As a direct and proximate result of the Entity Defendants failure to exercise due care in hiring and failure to train and supervise its law enforcement officers, the Law Enforcement Defendants violated Plaintiff's constitutional rights as detailed throughout this complaint.

17

83.     As a result of the misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**COUNT IX – State Law Claim**
**Entity Defendants' Breach of Duty in Hiring, Training, and Supervising—Willful and Wanton Conduct**

84.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

85.     The Entity Defendants at all times relevant to the events described herein had a duty to refrain from willful and wanton conduct in hiring, training, and supervising its law enforcement officers.

86.     The Entity Defendants breached that duty by engaging in willful and wanton conduct in hiring, training, and supervising the Law Enforcement Defendants, all of whom used unconstitutional techniques in homicide investigation, including the investigation at issue in this Complaint.

87.     As a direct and proximate result of the Entity Defendants' willful and wanton conduct in hiring, training, and supervising its law enforcement officers, the Law Enforcement Defendants violated Plaintiff's constitutional rights as detailed throughout this Complaint.

88.     As a result of the misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**COUNT X – State Law Claim**
**Breach of Contract**

89.     Plaintiff incorporates each paragraph of this Complaint as if fully restated herein.

90.     Defendants SHADER, GLEASON, GRAY, D'ORONZO, NOWACZYK, and MCGUIRE and Plaintiff entered into a valid and enforceable contract to wit: Defendants made

an offer that if Plaintiff submitted to a polygraph examination and passed, he would not be arrested and charged for any crime relating to the events of November 25, 2005. This was an enforceable contract.

91. Plaintiff accepted the terms of the contract and submitted to a polygraph examination on October 29, 2018. There is no dispute that Plaintiff passed the polygraph examination.

92. Defendants SHADER, GLEASON, GRAY, D'ORONZO, NOWACZYK, and MCGUIRE then breached the terms of the contract and arrested Plaintiff on November 26, 2007 for his alleged role in the November 25, 2005 robbery and shooting at Frank's Liquor Store.

93. As a proximate result of this misconduct, undertaken within the scope of Law Enforcement Defendants' employment, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

## COUNT XI – Illinois State Law Claim
## Respondeat Superior

94. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

95. In committing the acts alleged in the preceding paragraphs, Robbins Police Officers KIMBLE, FRANKLIN, HENDERSON, CAREY, and HATCHETT were agents of the Village of Robbins acting at all times within the scope of their employment.

96. In committing the acts alleged in the preceding paragraphs, Cook County Sheriff Officers SHADER, GLEASON, GRAY, D'ORONZO, NOWACZYK, and MCGUIRE were agents of Cook County and the Cook County Sheriff's Department acting at all times within the scope of their employment.

97.     Defendant Village of Robbins is liable as principal for all torts committed by its agents. Defendants Cook County and the Cook County Sheriff's Department are liable as principal for all torts committed by its agents.

**COUNT XII – Illinois State Law Claim**
**Indemnification**

98.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

99.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

100.     Robbins Police Officers KIMBLE, FRANKLIN, HENDERSON, CAREY, and HATCHETT are or were employees of the Village of Robbins who acted within the scope of their employment in committing the misconduct described herein.

101.     Cook County Sheriff Officers SHADER, GLEASON, GRAY, D'ORONZO, NOWACZYK, and MCGUIRE are or were employees of Cook County and the Cook County Sheriff's Department who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, ROBERT HILL, respectfully requests that this Court enter judgment in his favor and against Defendants COOK COUTY, THE SHERIFF OF COOK COUNTY, THE VILLAGE OF ROBBINS, ILLIONIS, Robbins Police Officers DETECTIVE D. KIMBLE, DETECTIVE SERGEANT T. FRANKLIN, HENDERSON, CAREY, and COMMANDER D. HATCHETT, and Cook County Sheriff Officers T. SHADER, GLEASON, D. GRAY, F. D'ORONZO, F. NOWACZYK, and C. MCGUIRE, awarding compensatory damages and attorneys' fees, as well as punitive damages against the Law Enforcement

Defendants in their individual capacities, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, ROBERT HILL, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

/s/ Julie M. Goodwin
*One of Plaintiff's Attorneys*

Jon Loevy
Julie Goodwin
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
julie@loevy.com