**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT HILL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-08228 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| COOK COUNTY, THE SHERIFF OF | ) | |
| COOK COUNTY, THE VILLAGE OF | ) | |
| ROBBINS, Robbins Police Officers | ) | |
| KIMBLE, FRANKLIN, HENDERSON, | ) | |
| CAREY, and HATCHETT, Cook County | ) | |
| Sheriffs SHADER, GLEASON, GRAY, | ) | |
| D'ORONZO, NOWACZYK, and | ) | |
| MCGUIRE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER

After a bench trial in state court, a judge on the Circuit Court of Cook County found

Plaintiff Robert Hill guilty of first-degree murder, attempted first-degree murder, and two counts

of armed robbery. But more than four years after his conviction, the Circuit Court of Cook

County dismissed the indictment based on government misconduct. Hill now sues for the events

that led to his arrest and conviction, including a decade of incarceration.

Hill filed a 13-count amended complaint against Cook County, the Sheriff of Cook

County, the Village of Robbins, Illinois, and a collection of law enforcement officers.

Defendants moved to dismiss. For the reasons stated below, the motions are granted in part and

denied in part. At this early stage, most of the claims pass muster.

**Background**

At the motion-to-dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

On November 25, 2005, two armed men robbed Frank's Liquor Store in Robbins, Illinois. *See* Am. Cplt. ¶ 11 (Dckt. No. 50). They concealed their identities before walking in. *Id.* at ¶ 12. Once inside, the robbers turned their weapons on the store owner, Fakhri Elayyan, and shot him. *Id.* They shot his daughter, Ghada Elayyan, too. *Id.* They grabbed money from the cash register and ran to the nearby 139th Street housing development. *Id.* The father survived his gunshot wounds, but the daughter unfortunately did not. *Id.*

Police officers from the Village of Robbins responded to the crime. *Id.* at ¶ 14. Defendant Sergeant Kimble was the lead detective, and he investigated the crime with Defendant Officers Franklin, Henderson, Carey, and Hatchett (collectively, the "Robbins Defendants"). *Id.*

The morning after the crime, the Robbins Police Department began receiving anonymous tips from concerned citizens. *Id.* at ¶ 15. But Hill alleges that the Robbins Police Department had already created a narrative for the crime: Darian Nance and Carnell Tyler were the two robbers inside the store, and Hill was their getaway driver. *Id.* He alleges that the Robbins Defendants focused on one anonymous tip that fit that narrative and built all of the evidence around it – so much so that they fabricated testimony and ignored exculpatory evidence. *Id.*

Specifically, the Robbins Defendants allegedly failed to document other phone calls with tips, and failed to record the names of key witnesses. *Id.* "Rather than do the police work

2

necessary to properly solve the crime," the amended complaint alleges, the Robbins Defendants "seized upon one such 'tip' and focused their attention on gathering evidence through manipulation and coercion to reach their end goal of making the case fit a presupposed narrative." *Id.*

According to a police report prepared by Defendant Kimble, Carnell Tyler – one of the alleged robbers – voluntarily showed up at the Robbins police station later that day. *Id.* at ¶ 16. He asked to sleep in a cell overnight. *Id.* While at the station, Tyler confessed that he participated in the robbery and the shooting. *Id.* He told officers that his accomplice Nance actually shot the store owner and his daughter, and after grabbing the cash, the two of them ran back to the housing project. *Id.* Tyler didn't say that Hill was at the store as the getaway driver. *Id.* In fact, he never mentioned Hill and never mentioned a getaway driver. *Id.*

Despite the alleged confession, Tyler didn't stay in custody long. An attorney from the Felony Review Division of the Cook County State's Attorney's Office interviewed him on November 28, 2005, and released him from custody immediately after the interview. *Id.* at ¶ 17.

Two days after the crime, the Robbins Defendants visited Hill at his mother's home and interviewed him about the armed robbery. *Id.* at ¶ 19. Hill told the officers that he wasn't involved. *Id.* The officers left without arresting him. *Id.*

Hill claims that the Robbins Defendants continued to pursue their original theory of the crime. *Id.* at ¶ 20. They interviewed two witnesses from the 139th Street housing development. *Id.* Both witnesses had criminal cases pending against them. *Id.* According to the amended complaint, the Robbins Defendants coerced the two witnesses into making false statements implicating Hill in the crime. *Id.* The witnesses received consideration, "known and still unknown," for their stories. *Id.*

3

On December 6, 2005, Officers Kimble, Franklin, Henderson, Carey, and Hatchett returned to Hill's home and arrested him. *Id.* at ¶ 21. The Robbins Police Department arrested Nance and Tyler that same day. *Id.*

The Robbins Defendants allegedly coerced the two witnesses to tell their false stories to a grand jury and support the "police version of events." *Id.* at ¶ 22. Both of them testified in front of the grand jury and implicated Hill. *Id.*

But Nance and Hill were not detained for long. The Felony Review Division of the Cook County State's Attorney's Office released Nance without charges. *Id.* at ¶ 23. The Division found that the witness statements identifying Nance as the shooter lacked credibility. *Id.* at ¶ 24. The Felony Review Division released Hill without charges, too. *Id.* at ¶ 25. It found that the witness statements implicating Hill as the getaway driver similarly lacked credibility. *Id.* But Tyler – the person who confessed at the police station – was charged with first-degree murder, attempted first-degree murder, and armed robbery. *Id.* at ¶ 26.

The Robbins Defendants continued to investigate the robbery. The officers performed canvas interviews and searched for physical evidence, but they found no forensic evidence that linked Hill to the crime. *Id.* at ¶ 27. Hill claims that the Robbins Defendants either failed to document the evidence, or documented the evidence and later destroyed it, "all of which was favorable" to Hill. *Id.* After nearly two years of investigation, Tyler was the only person charged with the crime. *Id.* at ¶ 28.

On October 22, 2007, the Cook County Sheriff's Department stepped into the investigation. *Id.* at ¶ 29. The team consisted of Officers Shader, Gleason, Gray, D'Oronzo, Nowaczyk, and McGuire (the "Cook County Sheriff Defendants"). *Id.*

4

The amended complaint alleges that the Cook County Sheriff Defendants knew that the Robbins Police Department "routinely violated citizens' constitutional rights during police investigations." *Id.* at ¶ 30. They also allegedly knew that the Robbins Police Department was an unprofessional operation. *See id.* at ¶¶ 29–32.

The amended complaint gives a number of examples of how the Robbins Police Department had earned a reputation for unprofessional police work. (Once again, the Court reminds the reader that it is merely summarizing the complaint's allegations, which the Court must accept as true at this stage.) The Cook County Sheriff Defendants allegedly knew that the "evidence room at the Robbins Police Department was maintained in disarray, with evidence of homicides and other serious crimes strewn openly throughout the room: untagged guns stored in bins, vials of blood spoiling on open shelves, and a 'neglected collection of about 200 rape kits' that dated back to the mid 1980's, many of which were never tested or otherwise investigated." *Id.* at ¶ 31. So, according to the amended complaint, the Robbins Police Department allegedly did shoddy police work and the Cook County Sheriff Defendants knew it.

Yet the Cook County Sheriff Defendants relied on the investigation by the Robbins Police Department, and then pursued the investigation with "unconstitutional tactics of their own." *Id.* at ¶ 32. They pursued the same goal: "arresting and prosecuting Robert Hill for a crime he did not commit." *Id.*

The Cook County Sheriff officers conferred with the Robbins team and reviewed their case file. *Id.* at ¶ 33. They knew that the Felony Review Division had determined that all statements implicating Hill were false. *Id.* But they "continued to try to charge him without cause." *Id.*

The Cook County officers re-interviewed certain witnesses and discovered that the statements implicating Hill were false. *Id.* at ¶ 34. They also found exculpatory evidence that was undocumented or suppressed. *Id.* Nevertheless, they didn't independently disclose their discoveries. *Id.* Instead, they adopted the Robbins Defendants' investigative reports, "further fabricated evidence, and coerced witnesses into conforming to the narrative created by" the Robbins Defendants. *Id.*

The Cook County Sheriff Defendants arrested Hill on October 29, 2007, about one week after taking over the case. *Id.* at ¶ 35. They arrested him even though they hadn't gathered any additional evidence against him. *Id.*

While in custody, Hill agreed to take a polygraph test, and he agreed on a set of ground rules with the Cook County Sheriff Defendants. *Id.* at ¶ 36. If Hill waived his Fifth Amendment rights and participated in a polygraph exam, he would be immunized from arrest and prosecution for the Frank's Liquor Store shooting and robbery. *Id.* But Hill had to tell the truth during the polygraph exam, and he had to pass. *Id.*

Officer Gray administered the polygraph exam to Hill. *Id.* at ¶¶ 37–38. He concluded that Hill told the truth. *Id.* at ¶ 38. Hill was released from custody without charges. *Id.*

His release didn't last long. Even though he passed the polygraph, the Cook County Sheriff Defendants still used it against him. *Id.* at ¶ 39. They falsely claimed that Hill had "missed a beat" and exhibited deception by reacting to the test. *Id.* at ¶ 40. They gave that assessment to the State's Attorney's Office, who then decided to charge Hill. *Id.* at ¶ 41.

While building the case for the grand jury, the Sheriff's Department allegedly continued to fabricate evidence. *Id.* at ¶ 42. The Department reduced charges for an incarcerated inmate in exchange for false testimony implicating Hill before the grand jury. *Id.* at ¶¶ 42–43. On

6

November 26, 2007, the Sheriff's Department arrested Hill once again (for the third time) for his role in the Frank's Liquor Store crime. *Id.* at ¶ 44. At that point, they had collected no additional evidence against him, except the fabricated testimony. *Id.*

The State's Attorney's Office ultimately charged Hill with first degree murder, attempted first degree murder, and two counts of armed robbery. *Id.* at ¶ 45. After a bench trial, the Court found him guilty. *Id.* On May 16, 2013, the Court sentenced Hill to consecutive terms of 40 years and 30 years, plus two concurrent 25-years terms. *Id.*

More than four years later, on December 17, 2017, the Circuit Court of Cook County dismissed the indictment. *Id.* at ¶ 68. The amended complaint doesn't offer many details about why, exactly, the Court dismissed the indictment. But it does offer the punchline. The state court found that "when the totality of circumstances surrounding the government misconduct is such that it offends the basic tenets of fair play and justice, dismissal of the indictment with prejudice is proper." *Id.*

Hill filed this case about a year later on December 14, 2018. All told, Hill was incarcerated for ten years (including pretrial detention), five of which he spent in a maximum-security facility. *Id.* at ¶¶ 63–64. Hill maintains his innocence. *Id.* at ¶ 1.

### Procedural History

Hill's amended complaint contains 13 counts against the Defendants stemming from his wrongful imprisonment. Six claims arise under 42 U.S.C. § 1983, and the other seven arise under Illinois law. Not all claims are against all Defendants.

The Robbins Defendants move to dismiss all counts against them. *See generally* Village of Robbins Defs.' Mot. to Dismiss (Dckt. No. 59). The Cook County Defendants move to

dismiss Counts I, II, VI, IX, X, and XI. *See generally* Cook County Defs.' Mot. to Dismiss
(Dckt. No. 61).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not
the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.3d 1510,
1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-
pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor.
*AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must
give the defendant fair notice of the basis for the claim, and it must be facially plausible.
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged." *Iqbal*, 556 U.S. at 678.

## Analysis

Hill brings 13 counts in his amended complaint. The first four claims are against the
individual Defendants under section 1983. Count I is a due process claim, alleging that the
individual Defendants deprived him of his right to a fair trial and caused his wrongful conviction
by withholding, suppressing, and fabricating evidence. Count II alleges unlawful pretrial
detention in violation of the Fourth Amendment. Count III is a conspiracy claim that alleges that
the Defendants plotted to withhold, suppress, and fabricate evidence. Count IV alleges that one
or more of the Defendants failed to intervene to prevent the constitutional violations.

The next two counts are section 1983 claims against the entities. Count V alleges that the
Village of Robbins has a policy and practice of engaging in the sort of misconduct alleged in the

amended complaint by failing to train, supervise, control, and discipline its officers. Count VI alleges the same thing against Cook County and the Cook County Sheriff's Department (to be precise, Hill sued the Sheriff of Cook County in his official capacity, which in reality is a claim against the institution).

The last seven claims arise under state law. Count VII alleges intentional infliction of emotional distress against the individual Defendants. Count VIII is a malicious prosecution claim, alleging that the individual Defendants knew that Hill was innocent and yet fabricated evidence, manipulated witnesses, and withheld exculpatory evidence. Count IX is a negligence claim against the entities, alleging that they failed to properly train, supervise, and discipline their officers. Count X alleges willful and wanton misconduct in the hiring, training, and supervision of the officers.

Count XI is a breach of contract claim against the Cook County Sheriff Defendants for breaching their non-prosecution agreement about the polygraph exam. Count XII is a respondeat superior claim against the entities. And finally, Count XIII is a claim for indemnification.

The Court will address each of the claims in turn. The parties briefed the claims in a different order, but for ease of reference, the Court will follow the numbering in the amended complaint.

## I. Due Process (Count I)

In Count I, Hill alleges that the individual Robbins Defendants and the individual Cook County Sheriff Defendants deprived him of his right to a fair trial by withholding, suppressing, and fabricating evidence. *See* Am. Cplt. ¶¶ 71–73. He also claims that the Cook County Sheriff Defendants breached the cooperation agreement about the polygraph exam. *Id.* at ¶ 73. Another claim addresses the polygraph, too, so the Court will address the polygraph later in the opinion.

Both groups of Defendants move to dismiss Count I. They argue that Hill has failed to state a claim because he has not sufficiently alleged a *Brady* violation. *See* Robbins Defs.' Mot. to Dismiss, at 11 (Dckt. No. 59); Cook County Sheriff Defs.' Mot. to Dismiss, at 3–4 (Dckt. No. 61). The Robbins Defendants also argue that an allegation of coerced witness testimony, without more, does not give rise to a claim. *See* Robbins Defs.' Mot. to Dismiss, at 11 (Dckt. No. 59).

The Robbins Defendants make three additional arguments in support of dismissal. First, they argue that Hill has failed to plead enough facts to state a claim about manufacturing evidence. *Id.* at 12. Second, they argue that Hill must bring any claim about fabricated evidence as a state law malicious prosecution claim (only), and not a federal due process claim. *Id.* at 13. Third, they assert a catch-all challenge to the entire complaint. They argue that Hill has not sufficiently alleged the personal involvement of each individual Robbins Defendant to give rise to personal liability under section 1983. *Id.* at 4–5.

Although Defendants frame Count I under different legal theories, it is important to remember that Hill has brought only one due process claim. He alleges that Defendants are liable for misconduct that resulted in an unfair trial in violation of his due process rights. *See Goudy v. Cummings*, 922 F.3d 834, 838 (7th Cir. 2019) ("It is important to clarify that although the parties occasionally refer to Goudy's '*Brady* claims' or 'identification procedure claim,' his allegations do not give rise to separate *claims* under section 1983.") (emphasis in original). The motion-to-dismiss stage is not the time to parse legal theories. Even so, the Court will address Defendants' arguments in turn.

## A.     *Brady* Violation

All Defendants argue that Hill has not sufficiently alleged a due process claim under *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* requires the government to disclose evidence

10

favorable to a criminal defendant when it is "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. The duty to disclose includes impeachment evidence. *Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006). A *Brady* claim involves three elements: "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued – in other words, 'materiality.'" *Carvajal v. Dominguez*, 542 F.3d 561, 566–67 (7th Cir. 2008).

The thrust of the argument is that Hill doesn't identify what specific exculpatory evidence the officers withheld or suppressed under *Brady*. Defendants argue that if they don't know what evidence is at stake, they lack sufficient notice of their alleged misconduct. *See* Robbins Defs.' Mot. to Dismiss, at 11–12 (Dckt. No. 59); Cook County Sheriff Defs.' Mot. to Dismiss, at 3–4 (Dckt. No. 61). But at this early stage, Defendants know enough. Hill put them on notice about the gist of the claim, and then some.

Hill alleges that the Robbins Defendants suppressed exculpatory witness statements that established the Frank's Liquor Store robbery did not involve a getaway driver. *See* Am. Cplt. ¶ 15. Hill also alleges that the Robbins Defendants suppressed favorable witnesses discovered during canvass interviews. *Id.* at ¶ 27. And the Robbins Defendants withheld favorable forensic evidence – or the lack thereof – that showed no connection between Hill and the robbery. *Id.*

The same goes for the Cook County Sheriff Defendants. Hill alleges that the Cook County Sheriff Defendants suppressed evidence, too. They allegedly didn't disclose exculpatory statements from re-interviewed witnesses. *Id.* at ¶ 34. They also failed to disclose certain incentives given to a witness who implicated Hill in the robbery. *Id.* at ¶ 42.

11

The "[f]ailure to disclose material impeachment evidence may violate an accused's right to due process under *Brady*, including 'if government officials suppressed evidence of fabrication.'" *Hill v. City of Chicago*, 2020 WL 509031, at *3 (N.D. Ill. 2020) (quoting *Lewis v. City of Chicago*, 914 F.3d 472, 480 (7th Cir. 2019)) (internal citations omitted); *see also Avery v. City of Milwaukee*, 847 F.3d 433, 443–44 (7th Cir. 2017). That's what Hill alleges. According to the complaint, Defendants didn't disclose that the witnesses gave false testimony in exchange for consideration. *See* Am. Cplt. ¶¶ 20, 34. They also didn't disclose that they had suppressed exculpatory evidence and suppressed favorable testimony. *Id.* at ¶¶ 27, 34.

Simply put, Hill has alleged "more than a sheer possibility" that the Defendants acted unlawfully. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If Defendants want more details, they can ferret them out during discovery.

Next, the Robbins Defendants argue that witness coercion is not a due process violation, but that argument is a non-starter. The Seventh Circuit has found that a "claim that an officer coerced a witness to give incriminating evidence does not, at least standing alone, violate the wrongly convicted person's due-process rights." *Avery*, 847 F.3d at 439. Although the act of coercion might be "deplorable," the witness's coerced testimony might ultimately prove to be true. *Id.*; *see also Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014). And a true statement, in and of itself, doesn't violate a defendant's due process rights.

Coerced testimony triggers a due process claim when the officer fails to disclose *how* he coerced the witness, meaning the "coercive tactics" used to compel testimony. *See Avery*, 847 F.3d at 439. And that makes sense: the coercive tactics could undercut the credibility of the witness. So, if the officers had disclosed coercive tactics, Hill could have pointed to the coercion to undermine the testimony. But if he never knew about the coercion, he lacked knowledge

about a possible grounds for impeachment. So the failure to disclose coercion methods can create a *Brady* violation.

Hill identifies two witnesses coerced by the Robbins Defendants: Terry Holloway and Carlos Tyler. *See* Am. Cplt. ¶ 20. Hill acknowledges that he knew about one form of coercion: Holloway and Tyler both had pending criminal cases when they testified against him. *Id.* Hill implies that the officers offered Holloway and Tyler a deal in their criminal cases if they agreed to implicate Hill in the robbery. *Id.*

But Hill also claims that the Robbins Defendants coerced the witnesses in some other way, with "consideration, known and still unknown." *Id.* If Hill had known about the Robbins Defendants' other coercive tactics during his criminal trial, he could have included that exculpatory evidence – undermining the witness testimony implicating Hill – in his defense. Given the totality of the allegations against the Robbins Defendants, Hill has alleged enough facts that they used undisclosed tactics to coerce false testimony.

Time will tell, and the parties can explore the issue during discovery. For now, Hill has pleaded enough to give Defendants notice of the alleged due process violations.

## B.    Fabrication of Evidence

The Robbins Defendants also assert that Hill can't bring a federal claim based on fabricated evidence. They contend that he can only bring a state-law malicious prosecution claim. *See* Robbins Defs.' Mot. to Dismiss, at 13 (Dckt. No. 59). Next, they argue that Hill's complaint does not sufficiently allege an "actionable deprivation of liberty" to support a fabrication of evidence claim. *Id.*

Maybe there was a time when fabricated evidence did not give rise to a due process claim, but that's not the current state of the law. "Allegations of evidence fabrication may state a

13

colorable due-process claim in the wake of our decisions in *Whitlock* and *Fields II*." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 580–82 (7th Cir. 2012) and *Fields v. Wharrie*, 740 F.3d 1107, 1114–15 (7th Cir. 2014)). Any argument foreclosing a federal claim "is premised on outdated law and is therefore rejected. It is now clear that the Fourteenth Amendment's Due Process Clause 'forbids the state from depriving a person of liberty . . . based on manufactured evidence' regardless of the availability of a state-law tort remedy." *McCullough v. Hanley*, 2018 WL 3496093, at *10 (N.D. Ill. 2018) (quoting *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018)).

The Robbins Defendants try to distinguish *McCullough* by claiming that it involved "three separate agencies and the complaint specifically alleged various overt acts of the three agencies working in tandem with one another to prosecute the plaintiff." *See* Robbins Defs.' Reply, at 6 (Dckt. No. 74). They argue that Hill's complaint lacks similar facts. *Id.* at 7. But *McCullough* didn't turn on a unique set of facts. The point is that fabricating evidence can give rise to a claim under federal law.

The Robbins Defendants then argue that Hill hasn't pleaded enough facts about the falsified reports, or how they were used to secure his conviction. *See* Robbins Defs.' Mot. to Dismiss, at 13 (Dckt. No. 59). In reality, the complaint contains plenty of details. Hill alleges that the Robbins officers created a "presupposed narrative" that he was the getaway driver for the Frank's Liquor Store robbery. *See* Am. Cplt. ¶ 15. The officers coerced two witnesses into providing false statements. *Id.* at ¶ 20. Those witnesses then repeated the false statements to a grand jury. *Id.* at ¶¶ 21–22. The false statements were presumably a part of the investigative file that the Cook County Sheriff Defendants relied on when they took over the case. *Id.* at ¶¶ 32–33. When the Cook County Sheriff Defendants began re-interviewing witnesses, they discovered

14

that the statements implicating Hill were false. *Id.* at ¶ 34. Nevertheless, they went ahead and presented the tainted case file to the State's Attorney's Office, the same entity that prosecuted and won Hill's conviction. *Id.* at ¶¶ 44–45.

Hill has alleged more than enough factual details to state a claim. *See McCullough*, 2018 WL 3496093, at *11; *cf. Munoz v. Rivera*, 169 F. Supp. 3d 815, 818 (N.D. Ill. 2015) ("In this case, by contrast, plaintiff alleges neither manufactured physical evidence nor the 'concoction' of a false story fed to a witness by law enforcement."). If Defendants want more details, they can request them during discovery.

### C. Fair Notice to the Individual Officers

The Robbins Defendants also argue that Hill fails to allege what each individual officer specifically did. *See* Robbins Defs.' Mot. to Dismiss, at 4–5 (Dckt. No. 59). They want the complaint to include more details about who did what when.

The Robbins Defendants argue that Hill has failed to meet the pleading standard for section 1983 claims. *See id.* They accuse Hill of penning a "collective responsibility" complaint that "fails to attribute any particular conduct to any Robbins defendant." *Id.* at 4. Section 1983 liability attaches only when an individual defendant "participated directly in the constitutional violation." *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). Because there is "no distinction between the alleged misconduct of the individual officers," the Robbins Defendants argue that this count fails to state a claim. *See* Robbins Defs.' Mot. to Dismiss, at 4–5 (Dckt. No. 59).

It's true that liability for an individual-capacity claim under section 1983 hinges on a defendant's personal involvement in the deprivation of a constitutional right. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). But at this early stage, "an allegation directed at multiple

defendants can be adequate to plead personal involvement." *Rivera v. Lake County*, 974 F.

Supp. 2d 1179, 1194 (N.D. Ill. 2013) (citing *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009)).

In any case in which "the plaintiff has been injured as the consequence of the actions of an

unknown member of a collective body, identification of the responsible party may be impossible

without pretrial discovery." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th

Cir. 2009). So the "initial inability to identify the injurers is not by itself a proper ground for the

dismissal of the suit." *Id.* The "children's game of pin tail on the donkey" is not a "proper

model for constitutional tort law." *Id.* (citation omitted).

At the pleading stage, "[t]he key is to generally name the 'persons responsible for the

problem.'" *Koh v. Graf*, 2013 WL 5348326, at *4 (N.D. Ill. 2013) (quoting *Burks v. Raemisch*,

555 F.3d 592, 594 (7th Cir. 2009)). That's what Hill did. He alleges that Sergeant Kimble and

Officers Franklin, Henderson, Carey, and Hatchett were members of the team that investigated

the Frank's Liquor Store crime. *See* Am. Cplt. ¶ 14. He alleges that they focused on a narrative

that implicated Hill. *Id.* at ¶ 15. The investigation team fabricated evidence, failed to document

exculpatory evidence, and otherwise withheld evidence. *Id.* at ¶¶ 15, 20, 22, 27. Hill alleges that

the individual Robbins Defendants acted jointly in this misconduct. *Id.*

The Robbins Defendants are on notice of their alleged misconduct as it relates to Hill's

due process claim. "The Defendants, and not [Hill], are in possession of the knowledge of

precisely which of them if any," withheld, suppressed, or otherwise fabricated evidence. *See*

*Wilson v. City of Chicago*, 2009 WL 3242300, at *2 (N.D. Ill. 2009).

For now, the allegations of the complaint suffice. At the summary judgment stage, things

might be different, depending on how discovery unfolds. *See Sanders v. St. Joseph County*, 2020

WL 1531354, at *3 (7th Cir. 2020) ("As a general rule, only someone personally involved in a

16

constitutional violation can be held liable under § 1983.").  Perhaps Hill will be able to present evidence that could support a jury verdict against each individual Defendant, viewed separately.  Or perhaps not.  That is a question for another day, after discovery.

## II.    Unlawful Pretrial Detention (Count II)

Hill next brings an unlawful pretrial detention claim under 42 U.S.C. § 1983.  He claims that as a result of the Defendants' conspiracy, he was unlawfully detained without probable cause.  *See* Am. Cplt. ¶¶ 77–81, 83.  The Robbins Defendants and the Cook County Sheriff Defendants move to dismiss Count II.

Defendants argue that Hill's claim is untimely.  When a "form of legal process result[s] in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."  *Manuel v. City of Joliet*, 137 S. Ct. 911, 919 (2017) ("*Manuel I*").  A claim for unlawful pretrial detention normally accrues when the detention ends because the "wrong is the detention rather than the existence of criminal charges."  *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("*Manuel II*").

Relying on *Manuel I* and *Manuel II*, Defendants argue that Hill's claim is time-barred because his pretrial detention ended when he was convicted and sentenced in 2013.  *See* Cook County Sheriff Defs.' Mot. to Dismiss, at 5 (Dckt. No. 61).  The statute of limitations for an unlawful pretrial detention claim is two years.  *See Savory v. Cannon*, 947 F.3d 409, 413 (7th Cir. 2020) (en banc).  But Hill didn't file a complaint until December 14, 2018, more than five years later.  *See* Cplt. (Dckt. No. 1).

Hill argues that his unlawful pretrial detention claim is timely under the *Heck* doctrine.  *See* Pl.'s Resp., at 3–8 (Dckt. No. 66).  A plaintiff cannot bring a section 1983 claim for an

unconstitutional conviction or imprisonment when a ruling in his favor "would render [the] conviction or sentence invalid." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

In *McDonough*, the Supreme Court revisited the *Heck* doctrine in the context of a section 1983 claim about fabricated evidence. *See McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019). The Court held that McDonough's claims accrued with the "favorable termination of his prosecution." *Id.* "Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck* will the statute of limitations begin to run." *Id.* at 2158 (internal citation omitted).

Drawing upon *McDonough*, the Seventh Circuit recently expounded on when a claim accrues in *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). The plaintiff in *Savory* claimed that the government had suppressed and fabricated evidence. *Id.* at 417. The Seventh Circuit found that "no section 1983 claim could proceed until the criminal proceeding ended in the defendant's favor or the resulting conviction was invalidated within the meaning of *Heck*." *Id.* at 418. Savory was released from state custody in 2011 with a conviction on his record. *Id.* at 412. The Seventh Circuit held that his claim accrued only "when the governor of Illinois pardoned him," not when he was released. *Id.* at 417–18. "Until that moment, his conviction was intact and he had no cause of action under section 1983." *Id.* at 418. The pardon started the statute-of-limitations clock ticking.

Here, Defendants try to make the same argument that failed in *Savory*. They argue that the clock started ticking when Hill's pretrial detention ended (and his post-trial custody began). *See* Cook County Sheriff Defs.' Mot. to Dismiss, at 5 (Dckt. No. 61). But the "rule urged by the defendants would result in claims being dead on arrival in virtually all section 1983 suits brought in relation to extant convictions." *Savory*, 947 F.3d at 418. By their logic, Hill's section 1983

18

claim would have accrued upon his conviction, "even though preclusion rules would effectively prevent [him] from bringing any claim inconsistent with" his criminal conviction. *See id.* at 419.

Under Defendants' approach, Hill could never bring an unlawful detention claim. If he filed after his conviction, but before his conviction was overturned, he would file too soon. But if he filed after dismissal of the indictment, he would file too late. It would create a heads-I-win-tails-you-lose dynamic against criminal defendants. And in *Savory*, the Seventh Circuit flatly rejected the notion that criminal defendants are simply out of luck.

In *Sanders v. St. Joseph County*, 2020 WL 1531354 (7th Cir. 2020), the Seventh Circuit returned to the issue of when a pretrial detention claim accrues. Sanders himself brought an unlawful detention claim. *Id.* at *2. The Seventh Circuit held that Sanders "could not have used § 1983 to contest his custody while it was ongoing," and his "claim of unlawful detention accrued, at the earliest, when he was released from jail." *Id.*

The Court qualified its ruling in two footnotes. First, if the plaintiff "meant to challenge the legitimacy of his initial seizure, any claim related to his arrest that does not implicate the ensuing custody expired two years after the arrest." *Id.* at *2 n.1 (citing *Manuel v. City of Joliet*, 903 F.3d 667, 669 (7th Cir. 2018)). That is, when a plaintiff challenges the initial detention, and a finding in his favor wouldn't undermine the later incarceration, then the claim accrues when the initial detention ends. *Id.* Second, if the claim does implicate a conviction and ensuing incarceration, then the claim accrues only if the criminal defendant ultimately prevails:

> If, however, a conclusion that [plaintiff's] confinement was unconstitutional would imply the invalidity of an ongoing criminal proceeding or a prior criminal conviction, then *Heck* would continue to bar [plaintiff's] claim after his release and until either those proceedings terminated in his favor or the conviction was vacated.

*Id.* at *2 n.2 (citing *McDonough v. Smith*, 139 S. Ct. 2149 (2019); *Savory v. Cannon*, 947 F.3d 409, 414 (7th Cir. 2020)).

19

Hill bases his Fourth Amendment claim on the assertion that he did nothing wrong. He claims that the Robbins Defendants made up a story that he was the getaway driver, coerced witnesses into implicating him, suppressed exculpatory evidence, and fabricated other evidence. *See* Am. Cplt. ¶¶ 15, 20–22, 27. The Robbins Defendants then passed off their investigation to the Cook County Sheriff Defendants. *Id.* at ¶¶ 29–30, 32. The Cook County Sheriff Defendants relied on the tainted investigation, and then proceeded to suppress exculpatory evidence and coerce false statements from witnesses. *Id.* at ¶¶ 33–34, 42–43. Defendants based Hill's arrest, detention, and prosecution on falsified police reports and fabricated evidence. *See id.* at ¶¶ 44– 45. To secure his conviction, they used the same evidence that supported his pretrial detention.

If Hill had brought his pretrial detention claim while incarcerated for murder, and prevailed, that finding would imply that he was innocent. Much like the plaintiffs in *Heck* and *Savory*, Hill "assert[s] the suppression of exculpatory evidence and the fabrication of false evidence in order to effect a conviction." *Savory*, 947 F.3d at 417. "There is no logical way to reconcile those claims with a valid conviction." *Id.*

Another court in this district recently addressed this very issue. *See Culp v. Flores*, 2020 WL 1874075 (N.D. Ill. 2020). In *Culp*, the plaintiff claimed that he was arrested and charged without probable cause, and that his subsequent detention was based on fabricated police reports prepared by the arresting officers. *Id.* at *2. The defendants argued that Culp's claims were time-barred because he was released from prison in 2013, two years before he brought suit. *Id.* Judge Feinerman analyzed Culp's claims under the Seventh Circuit's framework in *Savory* and *Sanders*, and held that "given the nature of his Fourth Amendment claim, a finding that Culp's detention in jail was unconstitutional would imply the invalidity of the charges against him, [and] *Heck* barred that claim until those charges were dismissed." *Id.* at *3. "[S]uccess on that

claim would be incompatible with a conviction on the charges for which Culp was arrested, detained, and prosecuted," so the claim "did not accrue until the charges against him were dismissed." *Id.* at *2.

The same analysis applies here. Hill's unlawful detention claim didn't accrue until the Circuit Court of Cook County dismissed the indictment in December 2017. He filed this lawsuit one year later. So he satisfied the statute of limitations, with one year to spare.

The Robbins Defendants argue that they weren't involved with Hill's 2007 arrest (by the Cook County Sheriff Defendants), but that argument doesn't advance the ball. The Cook County Sheriff Defendants relied on the Robbins Defendants' tainted investigative file. *See* Am. Cplt. ¶ 32. It makes no difference that Hill's prosecutors used evidence gathered by multiple police departments. *See McCullough v. Hanley*, 2018 WL 3496093, at *1 (N.D. Ill. 2018). Hill alleges that the Robbins Defendants contributed to his unlawful pretrial detention by fabricating evidence, so he has advanced a cognizable claim against them.

However, to the extent that Hill challenges his 2005 arrest, that claim is untimely. The Robbins Defendants arrested Hill on December 6, 2005. *See* Am. Cplt. ¶ 21. The Felony Review Division then released Hill without charging him. *Id.* at ¶ 25. Because a challenge to his 2005 arrest wouldn't implicate his arrest and detention in 2007, any pretrial detention claim involving that arrest expired two years after his release. *See Sanders*, 2020 WL 1531354, at *2 n.1.

Therefore the Court grants the Robbins Defendants' motion to dismiss Count II as it relates to the 2005 arrest. The Court otherwise denies the motions to dismiss Count II.

21

### III.    Conspiracy (Count III)

In Count III, Hill alleges that all individual Defendants conspired to deprive him of exculpatory evidence. *See* Am. Cplt. ¶ 83. What's more, Defendants also conspired to fabricate evidence, manipulate witnesses, and conceal their misdeeds. *Id.* Only the Robbins Defendants move to dismiss Count III.

The Robbins Defendants argue that the amended complaint contains mere recitations of the elements of a conspiracy claim. *See* Robbins Defs.' Mot. to Dismiss, at 8–9 (Dckt. No. 59). Although they admit that "conspiracy claims need not be pled with particularity," the Robbins Defendants claim that Hill "does not attribute any conduct to Robbins defendants outside of their alleged participation in the challenged incident." *Id.* at 9. Essentially, the Robbins Defendants argue that Hill put the words "conspired to" in front of his description of the Robbins Defendants' unconstitutional conduct in other counts. And in their view, that's not enough to support a conspiracy claim. *Id.*

"To establish conspiracy liability in a § 1983 claim, the plaintiff must [allege] that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). By their very nature, conspiracies are carried out in secret, so evidence is usually sparse at the pleading stage. *Id.* at 511. But the lack of evidence does not result in a heightened pleading standard. "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). So, a plaintiff must allege who, what, and when.

Here, Hill identifies the individual officers from Robbins Village and the Cook County Sheriff's Department as the parties to the conspiracy. *See* Am. Cplt. ¶ 33. Hill also asserts a general purpose of the conspiracy: to implicate him in the Frank's Liquor Store robbery. *Id.* at ¶¶ 15, 32. And Hill has alleged the approximate date of the conspiracy: October 2007, when the Cook County Sheriff Defendants first came onto the scene. *Id.* at ¶¶ 29, 33.

These allegations give the Robbins Defendants sufficient notice of the claim against them. "Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy." *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012). When assessing a complaint, the Supreme Court asks courts "to apply our 'judicial experience and common sense.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court "must be realistic . . . in light of what information is available to a plaintiff at the time a complaint is filed." *Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1084 (N.D. Ill. 2015). Put differently, "[c]omplaints just launch the case." *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).

Drawing all reasonable inferences in Plaintiff's favor, the complaint states a claim by alleging that the Robbins Defendants conspired with the Cook County Sheriff Defendants to pin the robbery and murder on Hill. Maybe the evidence won't pan out, and maybe Hill won't offer proof that the Defendants conspired against him. But that is a decision for another day, after discovery. In the meantime, the Robbins Defendants' motion to dismiss Count III is denied.

## IV.    Failure to Intervene (Count IV)

Hill alleges that at least one of the individual Defendants stood by without intervening to prevent the constitutional violations. *See* Am. Cplt. ¶ 89. As members of the same investigative units participating in the same misconduct, each individual officer had the opportunity to

intervene. And as a result of their failure to intervene, Hill was unlawfully convicted and incarcerated. *Id.* at ¶ 91. Only the Robbins Defendants move to dismiss Count IV.

To prevail on a failure-to-intervene claim, Hill must prove that Defendants (1) had a reason to know that a fellow officer committed a constitutional violation, and (2) had a "realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *see also Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 789 (N.D. Ill. 2013).

The Robbins Defendants make two arguments. First, they make a bootstrap argument, claiming that the failure-to-intervene claim must be dismissed because there is no underlying constitutional violation. *See* Robbins Defs.' Mot. to Dismiss, at 3 (Dckt. No. 59). But because the underlying claims survive dismissal, that argument fails.

Second, the Robbins Defendants argue that Hill has failed to meet the pleading standard for section 1983 claims. *Id.* at 4–5. Once again, they argue that Hill has merely alleged a "collective responsibility" complaint that "fails to attribute any particular conduct to any Robbins defendant." *Id.* at 4. For the reasons explained above, Hill has pleaded enough. Later, the Court can assess whether Hill can offer Defendant-specific evidence. The Court denies the motion to dismiss Count IV.

## V.     Municipal Liability (Counts V and VI)

Count V is a claim for municipal and supervisory liability against the Village of Robbins, and Count VI is the same type of claim against Cook County and the Cook County Sheriff's Department. *See* Am. Cplt. ¶¶ 92–97. Defendants move to dismiss both claims.

As all parties acknowledge, Counts V and VI lay the groundwork for a *Monell* claim against the two municipal defendants. *See Monell v. Dep't of Social Servs.*, 426 U.S. 658, 690 (1978). To state a claim under section 1983 against a municipality, a plaintiff must allege that an

official policy or custom caused the constitutional violation, and that the official policy or custom was the "moving force" behind the violation. *See Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

"A plaintiff may demonstrate an official policy through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 515; *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). A *Monell* claim focuses not on "individual misconduct by police officers (that is covered elsewhere in § 1983), but a *widespread practice* that permeates a critical mass of an institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Therefore, "misbehavior by one or a group of officials is only relevant where it can be tied to the policy, customs, or practices of the institution as a whole." *Id.*

Hill alleges that both the Village of Robbins and the Cook County Sheriff's Department have a history of failing to discipline and train their officers. *See* Am. Cplt. ¶¶ 47–52, 53–62. Based on these allegations, Hill seemingly relies on a "widespread practice" theory of liability. To prevail, a plaintiff "must demonstrate that there is a policy at issue rather than a random event. This may take the form of an implicit policy or a gap in expressed policies, or 'a series of violations to lay the premise of deliberate indifference.'" *Thomas*, 604 F.3d at 303 (quoting *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003)) (cleaned up).

Defendants contend that Hill hasn't identified a policy or practice with enough specificity. *See* Robbins Defs.' Mot. to Dismiss, at 5 (Dckt. No. 59); Cook County Sheriff Defs.'

Mot. to Dismiss, at 7–8 (Dckt. No. 61). But the Seventh Circuit has reiterated that "federal courts may not apply a 'heightened pleading standard – more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure – in civil rights cases alleging municipal liability under . . . 42 U.S.C.§ 1983.'" *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)) (cleaned up). "In determining whether a plaintiff has sufficiently pled a widespread practice in a *Monell* claim, the Court looks to the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1079 (N.D. Ill. 2018).

Hill's factual allegations, taken as true, nudge his *Monell* claims "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S, 544, 570 (2007). He alleges that the Robbins Police Department has a widespread practice of suppressing and manufacturing evidence, creating false narratives against innocent people, and coercing witnesses to adopt them. *See* Am. Cplt. at ¶¶ 49–52. Hill also alleges that the Village failed to properly train, supervise, or discipline its officers to prevent these constitutional violations, as evidenced by their repeated occurrence. *Id.* at ¶¶ 49, 93.

Hill supports those allegations by citing four other cases that arose around the time of his own investigation in which people were arrested without probable cause. *Id.* at ¶ 48. Two of the cases involved Officer Kimble, a named Defendant here. *See Morris v. Robbins*, No. 01-cv-6799 (N.D. Ill. 2001); *Richmond v. Kimble*, No. 04-cv-1091 (N.D. Ill. 2004). The cases are old, and the examples are few, but they were roughly contemporaneous with the 2005 crime at hand.

26

Hill also points to repeated instances of officer misconduct in his own investigation. The complaint alleges that during the Frank's Liquor Store investigation, all five of the Robbins police officers suppressed exculpatory witness statements and forensic evidence. *See* Am. Cplt. ¶¶ 15, 27. They also coerced witnesses to implicate Hill in the crime. *Id.* at ¶¶ 20, 22, 34. And the complaint alleges that the evidence room at the Robbins Police Department was "maintained in disarray," with various kinds of evidence from multiple cases "strewn openly throughout the room." *Id.* at ¶ 31. Finally, Hill claims that the Village of Robbins acted in accordance with these widespread practices by securing his own conviction. *See id.* at ¶¶ 47, 49.

It's not immediately clear how a messy evidence room helps Hill here. It does not appear that Hill is arguing that his physical evidence was maintained in the same room and became tainted in some way. But he does allege, at a higher level of generality, that his evidence was mishandled. It might not be enough at the summary judgment stage, but at this point, the allegations of the complaint are enough to state a claim when viewed as a whole. *See Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1078–79 (N.D. Ill. 2018) (finding allegations that multiple officers were involved in obtaining a false witness statement; that officers drafted three falsified police reports; and that the city kept files to hide exculpatory evidence were sufficient to support a *Monell* claim); *Bolden v. City of Chicago*, 293 F. Supp. 3d 772, 781 (N.D. Ill. 2017) ("Bolden's allegations have put the city on notice of the unlawful conduct for which it is accused, and state sufficient facts to make plausible Bolden's assertion that the city had a widespread policy of obtaining false convictions through flawed investigations.").

The same goes for the Cook County Sheriff's Department. Hill alleges that the Cook County Sheriff's Department has a widespread practice of suppressing and manufacturing evidence, leading to false arrests. Hill also alleges that the Cook County Sheriff's Department

27

failed to properly train, supervise, or discipline its officers to prevent these constitutional violations. *Id.* at ¶¶ 59–60, 96. He points to three other cases involving the Department in which plaintiffs alleged false arrest. *Id.* at ¶ 58. Two of those cases involved the fabrication and suppression of evidence, one in the context of a wrongful conviction. *Id.*

Hill again points to his own circumstances, describing how, after re-interviewing certain witnesses and discovering that the Robbins officers had coerced false statements and otherwise suppressed exculpatory evidence, the Cook County Sheriff Defendants independently chose to withhold that information. *Id.* at ¶ 34. Then, after Hill had taken his polygraph exam, the officers falsely claimed that Hill had reacted to the test, thereby belying his own guilt. *Id.* at ¶ 40. Hill also alleges that the Cook County Sheriff's Department worked with an incarcerated individual to fabricate evidence against him. *Id.* at ¶¶ 42–43. The Cook County Sheriff Defendants relayed all this false information to the State's Attorney's Office for his prosecution.

Hill offers more than mere boilerplate. Even if the additional cases that Hill cites are not on all-fours with his claims here, "[p]ost-*White* courts analyzing *Monell* claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." *Williams v. City of Chicago*, 2017 WL 3169065, at *9 (N.D. Ill. 2017) (collecting cases) (citing *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016)). Courts in this district have generally stuck with this approach when addressing motions to dismiss municipal *Monell* claims. *See, e.g., Hill v. City of Chicago*, 2020 WL 509031, at *4 (N.D. Ill. 2020); *Pursely v. City of Rockford*, 2019 WL 4918139, at *6–7 (N.D. Ill. 2019); *Hallom v. City of Chicago*, 2019 WL 1762912, at *4 (N.D. Ill. 2019); *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1078–79 (N.D. Ill. 2018).

Discovery may or may not yield proof that there is a widespread practice of violating constitutional rights. But in the meantime, Hill has alleged enough to support a plausible *Monell* claim against both municipal defendants. The motions to dismiss Counts V and VI are denied.

## VI. Intentional Infliction of Emotional Distress (Count VII)

Hill also brings seven claims under state law. *See* Cplt. Counts VII – XIII. The first is a claim for intentional infliction of emotional distress (Count VII). *See* Am. Cplt. ¶¶ 98–102. He claims that by arresting him and recommending his case to the State's Attorney's Office, the individual Defendants caused him "great mental anguish, humiliation, degradation, emotional pain and suffering." *See id.* at ¶ 102. Only the Robbins Defendants move to dismiss this claim.

Illinois imposes a one-year statute of limitations on claims of intentional infliction of emotional distress. *See* 745 ILCS 10/8-101(a). The Seventh Circuit has held that a "claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *see also Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006).

The Robbins Defendants arrested Hill on December 6, 2005. *See* Am. Cplt. ¶ 21. After his release, the Cook County Sheriff Defendants arrested Hill a second time on October 29, 2007, and a third time on November 26, 2007. *Id.* at ¶¶ 35, 44. Hill filed this suit on December 14, 2018, more than ten years later. *See* Cplt. (Dckt. No. 1). If the claim accrued on the date of his last arrest, then Hill filed suit more than a decade too late.

But the analysis doesn't end there. *Birdewell* addressed intentional infliction of emotional distress related to the plaintiff's *arrest*. But unlike the plaintiff in *Birdewell*, Hill rests his claim on his wrongful conviction, not his arrest. As discussed above, under *Heck v. Humphrey*, a plaintiff can't bring a section 1983 claim for damages if it would undermine an

outstanding conviction or sentence. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994). A court must dismiss such a claim if judgment for the plaintiff "would necessarily imply the invalidity of his conviction or sentence." *Id.*

 *Heck* involved a claim under federal law (section 1983), not state law. But at least one Illinois court has extended the *Heck* doctrine to claims under state law, too. *See Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1111–13, 350 Ill. Dec. 593, 948 N.E.2d 1100 (2011). The court in *Lieberman* applied the *Heck* analysis and foreclosed a medical malpractice claim that was, in effect, a collateral challenge to a civil commitment proceeding. "The adoption of the *Heck* scheme here avoids the inconsistent effect of awarding money damages for unlawful detention to lawfully confined plaintiffs. Such a result is also consistent with a long-standing judicial policy of avoiding conflicting judgments." *Id.* at 1112.

 Under *Lieberman*'s extension of *Heck*, Hill could not have brought his claim for intentional infliction of emotional distress until his conviction was overturned. He claims that he suffered emotional distress from the false accusation and unjust incarceration, which is inconsistent with a finding of guilt. A ruling in his favor would have undercut his conviction, so he needed to wait until his indictment was dismissed. *See Walker v. White*, 2017 WL 2653078, at *6 (N.D. Ill. 2017) (finding that "under *Lieberman's* application of *Heck* to Illinois claims, [the plaintiff] could not bring [an intentional infliction of emotional distress claim based on his wrongful conviction] until his conviction was overturned").

 The Seventh Circuit considered a similar situation in *Parish v. City of Elkhart*, 614 F.3d 677, 683–84 (7th Cir. 2010). In *Parish*, the Seventh Circuit held that "under Indiana's adoption of *Heck*, [the plaintiff] could not have brought [his intentional infliction of emotional distress claim] until his conviction was disposed of in a manner favorable to him." *Id.* at 684. The Court

found that the "heart of Parish's complaint [was] a claim that the defendant officers fabricated an entire case against him that led to his wrongful conviction." *Id.* A finding that Parish was innocent – and that the officers had fabricated a case against him – would have cast a long shadow over his conviction. *Id.* And under *Heck*, a plaintiff can't bring that kind of claim until the conviction is no more.

Other courts in this district have applied the *Heck* framework to claims of intentional infliction of emotional distress, finding that the clock didn't start ticking until the conviction was vacated. *See, e.g.*, *Sanchez v. Village of Wheeling*, 2020 WL 490964, at *9 (N.D. Ill. 2020) ("Given its factual predicate, the IIED claim 'was not complete prior to the time of conviction because the conviction was the crux of the case.'") (quoting *Parish v. City of Elkhart*, 614 F.3d 677, 683 (7th Cir. 2010)); *Brown v. City of Chicago*, 2019 WL 4694685, at *7 (N.D. Ill. 2019) ("A contrary result would require Plaintiff to have filed his IIED claim related to his 1990 convictions while he was awaiting retrial."); *Andersen v. City of Chicago*, 2019 WL 6327226, at *6 (N.D. Ill. 2019) ("Andersen's claim did not accrue until the favorable termination of his conviction and is therefore timely."); *Walker v. White*, 2017 WL 2653078, at *6 (N.D. Ill. 2017) ("[T]he IIED claim alleged in the complaint is tied to the validity of the conviction because it alleges that the extreme and outrageous conduct was related to the trial itself."); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 803 (N.D. Ill. 2013) ("And as in *Parish*, the factual predicate of Starks's IIED claim directly attacks the validity of his convictions."). The Seventh Circuit has acknowledged *Heck*'s applicability to claims under Illinois law, too. *See Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1133 (7th Cir. 2012) (Hamilton, J., concurring) (describing "Illinois's embrace of [*Heck*] in *Lieberman v. Liberty Healthcare Corp.*").

This Court follows that line of authority. Hill's intentional infliction of emotional distress claim rests upon the notion that the Defendants manipulated the evidence, and that Hill was arrested, prosecuted, and convicted for a crime that he did not commit. That claim is inconsistent with a finding of guilt. His claim would undermine his conviction, so under *Lieberman*'s extension of *Heck*, Hill could not have raised that claim while his conviction stood.

Hill's conviction was overturned on December 17, 2017. *See* Am. Cplt. ¶ 68. He filed this lawsuit on December 14, 2018. *See* Cplt. (Dckt. No. 1). That's just within the one-year statute of limitations. Therefore, the Court denies the motion to dismiss Count VII.

## VII. Malicious Prosecution (Count VIII)

Hill next brings a malicious prosecution claim, alleging that the individual officers' misconduct led to his prosecution for a crime that he did not commit. *See* Am. Cplt. ¶¶ 103–07. Only the Robbins Defendants move to dismiss Count VIII.

Under Illinois law, a malicious prosecution claim includes five elements: "(1) the commencement or continuance by the defendant of an original judicial proceeding against the plaintiff; (2) termination of the original proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice; and (5) special damages." *Grundhoefer v. Sorin*, 2014 IL App (1st) 131276 ¶ 11, 386 Ill. Dec. 399, 20 N.E.3d 775 (2014). The Robbins Defendants focus on the first element (only). They argue that Hill has failed to state a claim because he doesn't allege any facts showing that the Robbins Defendants contributed to the judicial proceeding against him. *See* Robbins Defs.' Mot. to Dismiss, at 10 (Dckt. No. 59).

Illinois allows a plaintiff to bring this claim against certain defendants, like police officers and prosecutors, so long as they had a meaningful role in the ensuing prosecution. "Liability for malicious criminal prosecution is not confined to situations where the defendant

signed a complaint against the plaintiff. Rather, liability extends to all persons who played a *significant role* in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 348–49, 248 Ill. Dec. 160, 733 N.E.2d 835 (2000) (emphasis added); *see also Allen v. Berger*, 336 Ill. App. 3d 675, 678, 271 Ill. Dec. 149, 784 N.E.2d 367 (2002) ("[W]hen a person makes a knowingly false report to a prosecuting officer, the resulting prosecution is attributable to that person."). "[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial – none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision." *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988).

The complaint satisfies that standard. As alleged in the complaint, the Robbins officers crafted the narrative that Hill was the getaway driver. *See* Am. Cplt. ¶¶ 15, 34. They investigated the crime for two years, fabricating evidence, coercing witnesses, and suppressing exculpatory evidence in the process. *Id.* at ¶¶ 20–27. And they passed that investigative file to the Cook County Sheriff Defendants. *Id.* at ¶ 33. The Cook County Sheriff Defendants, in turn, adopted the Robbins Defendants' investigation reports, and coerced witnesses into confirming the Robbins officers' narrative of the crime. *Id.* at ¶¶ 32, 34.

Hill claims that the Robbins Defendants laid the foundation for the Cook County Sheriff Defendants' investigation which, in turn, the State's Attorney's Office relied upon to prosecute Hill. As a result, Hill has alleged that the individual Robbins Defendants played a significant role in his prosecution. The complaint contains sufficient facts to allege that the individual Defendants "commenced or continued" legal proceedings against Hill. *See Collier v. City of*

*Chicago*, 2015 WL 5081408, at *9 (N.D. Ill. 2015); *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 928–29 (N.D. Ill. 2013).

The Robbins Defendants don't challenge the other elements of the malicious prosecution claim. Therefore, the motion to dismiss Count VIII is denied.

## VIII. Breach of Duty in Hiring, Training, and Supervising (Counts IX and X)

Hill also brings two state law claims against the Village of Robbins and the Cook County Sheriff's Department for the hiring, training, and supervision of their law enforcement officers. Count IX is a negligence claim, and Count X is a claim under the more aggravated "willful and wanton" standard. *See* Am. Cplt. ¶¶ 108–17. Both the Village of Robbins and the Cook County Sheriff's Department move to dismiss these counts.

In Illinois, claims about hiring are a distinct cause of action from claims about training and supervision. *See Doe v. Coe*, 135 N.E.3d 1, 15 (Ill. 2019) (citing *Vancura v. Katris*, 939 N.E.2d 328, 343 (Ill. 2010)). So the Court will address each cause of action separately.

### A. Hiring the Officers

Defendants contend that they have immunity from Hill's claims of negligent and willful and wanton hiring under the Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq.* Section 2-201 of the Act provides immunity for employees who make policy and exercise discretion:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201. Section 2-201 "provides absolute immunity for both negligence and willful and wanton conduct." *Andrews v. Metro. Water Reclamation Dist. of Greater Chicago*, 2019 IL 124283, ¶ 26 (Ill. 2019).

Based on the plain text, section 2-201 applies to an "employee," not an agency. *See* 745 ILCSS 10/2-201. It addresses individual liability for a person in a "position" who is sued for "his" act. *Id.* Standing alone, the text speaks to the employee's liability and says nothing about the employer's liability.

Hill picks up on these textual cues, and argues that section 2-201 has no bearing here because it is limited to public *employees* and not public *entities*. *See* Pl.'s Resp., at 11 (Dckt. No. 66). Hill points out that section 2-109 of the Act is the proper provision for public entities, and other courts in this district have declined to merge the two sections. *Id.*

Viewed in isolation, section 2-201 immunizes employees, not entities. So, if that provision stood alone, it would not provide much protection to local governments. But a neighboring provision does provide immunity for entities, and it draws section 2-201 back into the field of play.

Under the Act, a local government's liability depends on the liability of its employee. Section 2-109 provides that a "local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. So the employer's liability depends on the employee's liability. If the employee is "not liable," then the public entity is "not liable." *Id.*

"Read together, [sections 2-109 and 2-201] immunize a public entity from liability for the discretionary acts or omissions of its employees." *Monson v. City of Danville*, 115 N.E.3d 81, 88 (Ill. 2018); *see also Andrews v. Metro. Water Reclamation Dist. of Greater Chicago*, 2019 IL

35

124283, ¶ 11 (Ill. 2019) ("These sections immunize a local governmental entity from liability for injuries arising out of its employee's acts or omissions while determining policy and exercising discretion."). Simply put, a public entity isn't liable when its employee isn't liable. And section 2-201 limits when an employee is liable.

Section 2-201 grants immunity to a defendant only if "(1) the employee held either a position involving the determination of policy *or* a position involving the exercise of discretion and (2) the employee engaged in *both* the determination of policy *and* the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted." *Andrews*, 2019 IL 124283, ¶ 27 (emphasis in original); *see also Glickman v. Main-Niles Ass'n of Special Recreation*, 2020 WL 887444, at *4 (N.D. Ill. 2020).

The immunity extends to hiring decisions. The Act precludes any claim about hiring, and it makes no difference if the claim is couched as negligence or willful and wanton conduct. As the Seventh Circuit has explained, "Illinois state courts have determined that '[t]he decision to hire or not to hire a police officer is an inherently discretionary act and, thus, is subject to the immunities contained in the Immunity Act.'" *Doe v. Village of Arlington Heights*, 782 F.3d 911, 922 (7th Cir. 2015) (quoting *Johnson v. Mers*, 279 Ill. App. 3d 372, 380, 216 Ill. Dec. 31, 664 N.E.2d 668 (1996)). Other state and federal courts have reaffirmed that public entities are immune from hiring claims under section 2-201. *See Glickman v. Main-Niles Assoc. of Special Recreation*, 2020 WL 887444, at *5 (N.D. Ill. 2020) (collecting cases).

Counts IX and X are dismissed to the extent that they assert a claim against the municipal Defendants about hiring the officers.

36

### B. Training and Supervising the Officers

Counts IX and X also include claims against the Village of Robbins and the Cook County Sheriff's Department for failure to train and supervise their law enforcement officers. Once again, Defendants invoke the Tort Immunity Act.

"For § 2-201 immunity to apply, the [public entity] must establish that its actions or omissions amounted to both a policy determination and an exercise of discretion." *Love v. City of Chicago*, 363 F. Supp. 3d 867, 872 (N.D. Ill. 2019). A "policy determination" requires "the public entity or employee to balance competing interests and make a judgment call as to what solutions will best serve each of those interests. Such interests may include safety, convenience, and cost." *Andrews*, 2019 IL 124283, at ¶ 28 (cleaned up).

A discretionary action, on the other hand, is one "where the employee has exercised 'personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed.'" *Id.* (quoting *Monson v. City of Danville*, 115 N.E.3d 81, 91 (Ill. 2018)). Ministerial acts, on the other hand, are "perform[ed] based on a given set of facts, in a prescribed manner, in accordance with a mandate of legal authority, and without reference to the official's discretion as to the propriety of that act." *Glickman v. Main-Niles Assoc. of Special Recreation*, 2020 WL 887444, at *4 (N.D. Ill. 2020) (quoting *Malinksi v. Grayslake Cmty. High Sch. Dist. 127*, 2014 IL App (2d) 130685, ¶ 8, 384 Ill. Dec. 522, 16 N.E.3d 915 (2014)). Both a policy determination and a discretionary act require a "conscious decision." *Andrews*, 2019 IL 124283, at ¶ 34.

Determining whether an action is discretionary or ministerial "resists precise formulation and . . . must be made on a case-by-case basis." *Snyder v. Curran Twp.*, 657 N.E.2d 988, 993–94 (Ill. 1995); *see also Andrews*, 2019 IL 124283, at ¶ 28. Courts typically categorize particular

acts as discretionary or ministerial at the summary judgment stage, after the parties have had the benefit of discovery. *See Love*, 363 F. Supp. 3d at 872.

Defendants argue that the Court can dispose of this issue on the face of the pleadings. They point out that Hill has alleged that the individual officers' misconduct "was undertaken pursuant to the policy and practice" of the municipal defendants. *See* Am. Cplt. ¶¶ 93, 96. But these allegations are part of Hill's *Monell* claims, and a "party may state as many separate claims or defenses as it has, regardless of consistency." *See* Fed. R. Civ. P. 8(d)(3). Even so, Hill's allegation that the Defendants had a "policy" does not mean that there was a policy *determination* that required the weighing of competing interests. Although common sense would dictate that the supervision and "training of police officers would require discretion and involve policy determination, cases are not to be decided on the basis of intuition." *Patton v. Chicago Heights*, 2010 WL 1813478, at *3 (N.D. Ill. 2010).

Other courts have found that the pleadings stage is too early to determine section 2-201's applicability to claims that supervision and training were negligent or willful and wanton. *See, e.g.*, *Love*, 363 F. Supp. 3d at 873 ("Because the Illinois Supreme Court instructs the Court to make immunity determinations on a case-by-case basis, the Court does not find at this time that § 2-201 immunity bars Love's claims."); *White v. City of Chicago*, 2016 WL 4270152, at *9 (N.D. Ill. 2016) ("[T]he Court cannot determine from White's allegations alone that the City's training and supervision of the police officer . . . required both a determination of policy and an exercise of discretion."); *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 762 (N.D. Ill. 2015) ("Based on Plaintiffs' allegations, the Court cannot determine whether the City's supervision of its police officers was both a determination of policy and an exercise of discretion."); *Patton v. Chicago Heights*, 2010 WL 1813478, at *3 (N.D. Ill. 2010) ("Based on the sparse allegations of

Count III, it may well be that employees training police officer[s] in Chicago Heights might not be determining policy and exercising discretion and thus not be entitled to immunity under the Act. But one cannot tell; the resolution 'is not apparent on the face of the complaint.'") (citation omitted).

The Tort Immunity Act is an affirmative defense, so Defendants bear the burden of proof. *See Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 280 (Ill. 2003). If they rely on the pleadings, as they do here, the complaint must "plainly reveal[]" "everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2008). It's not clear that, based on Hill's complaint alone, the Defendants' training and supervision of their officers necessitated both a determination of policy and an exercise of discretion. Therefore, Defendants' motion to dismiss the claims alleging a breach of their duties to train and supervise is denied.

As a final argument, Defendants once again contend that Hill has not alleged enough facts to support his claims. *See* Robbins Defs.' Mot. to Dismiss, at 15 (Dckt. No. 59); Cook County Sheriff Defs.' Mot. to Dismiss, at 14–15 (Dckt. No. 61). But as explained above, the complaint contains plenty of details. And in any event, Defendants' argument is perfunctory. The Cook County Sheriff's Department addresses the training and supervision claims in a single throw-away sentence. *See* Cook County Sheriff Defs.' Mot. to Dismiss, at 14–15 (Dckt. No. 61). The Village of Robbins doesn't address these claims at all. *See* Robbins Defs.' Mot. to Dismiss, at 15 (Dckt. No. 59). "Perfunctory or undeveloped arguments are waived." *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an

argument by failing to make it before the district court.  We apply that rule where a party fails to

develop arguments related to a discrete issue . . . .") (internal citations omitted).

## IX.    Breach of Contract (Counts I and XI)

Finally, the Cook County Sheriff Defendants move to dismiss the state-law breach of

contract claim (Count XI), as well as its due process counterpart (Count I).  *See* Am. Cplt. ¶¶ 73,

118–22.  Hill claims that the individual Defendants' misconduct led to his arrest and his

subsequent deal with the Cook County Sheriff Defendants to enter into a non-prosecution

agreement.  *See* Am. Cplt. ¶ 73.  As Hill sees it, without the due process violations, he never

would have been arrested, forced to negotiate a deal, and then subjected to further detention

when Defendants violated that deal.

In the amended complaint, Hill alleges that he entered into a non-prosecution agreement

with the Cook County Sheriff Defendants in exchange for his cooperation in the Frank's Liquor

Store investigation.  Under that agreement, if Hill waived his Fifth Amendment rights and took a

polygraph exam – and passed – the Cook County Sheriff Defendants would immunize him from

arrest and prosecution for the robbery and felony murder.  *See* Am. Cplt. ¶ 36.  Hill took the

exam, and Officer Gray concluded that Hill had been truthful.  *Id.* at ¶¶ 37–38.  That is, he

passed the polygraph test.  Although the Cook County Sheriff Defendants initially released Hill,

they soon changed their minds.  *Id.* at ¶¶ 38, 41.  They claimed that Hill had, in fact, lied during

the exam because he had "missed a beat."  *Id.* at ¶ 40.  So they presented the test as evidence to

the State's Attorney's Office.  *Id.* at ¶ 41.  Hill was then prosecuted and convicted for his alleged

role in the robbery.

The Cook County Sheriff Defendants argue that Hill's contract claims are time-barred.

They contend that Hill's claim accrued when it became clear to him that Defendants weren't

going to abide by the cooperation agreement, relying heavily on *Stapinski v. Masterson*, 2017 WL 497772, at *2 (N.D. Ill. 2017). *See* Cook County Sheriff Defs.' Mot. to Dismiss, at 15 (Dckt. No. 61). They further rely on *Stapinski* to rebut any argument that *Heck* might have barred Hill's claim until his conviction was overturned. *See id.*

But the plaintiff in *Stapinski* was never convicted. As Judge Durkin expressly stated, "the Seventh Circuit has consistently held that arguments based on *Heck* like those raised by Stap[i]nski, *and other plaintiffs who were never convicted*, are 'non-starters.'" *Stapinski*, 2017 WL 497772, at *2 (emphasis added). That is, the claim was not inconsistent with a conviction because there was no conviction. As explained above, *Heck* forecloses a convicted plaintiff from bringing a section 1983 claim that would undermine his conviction (if successful). *Savory v. Cannon*, 947 F.3d 409, 418 (7th Cir. 2020).

So the question becomes, would a finding that the Cook County Sheriff Defendants breached the cooperation agreement invalidate Hill's conviction such that the *Heck* doctrine should apply? Taking the amended complaint as true, the answer appears to be "yes." Hill alleges that the cooperation agreement hinged on his promise to tell the truth during the polygraph examination. *See* Am. Cplt. ¶ 36. The Cook County Sheriff Defendants falsely asserted that Hill had "missed a beat" and therefore lied during the exam. *Id.* at ¶ 40. Hill alleges that the State's Attorney's Office relied – at least to some degree – on the Defendants' representation that Hill lied during his examination when it chose to pursue criminal charges against him. *Id.* at ¶ 41. If Hill had prevailed on a claim that the Defendants breached the agreement, it would necessarily follow that Hill had, in fact, told the truth during the exam. And that would mean Hill truthfully stated that he had nothing to do with the Frank's Liquor Store incident.

So Hill's breach of contract claim would have undermined his conviction. A successful claim that he told the truth during the polygraph exam would mean that he was innocent of the crime. And a claim that he was innocent is inconsistent with a finding of guilt. Therefore, under *Heck*, Hill was barred from bringing his breach of contract claim under section 1983 until his conviction had been terminated.

The Cook County Sheriff Defendants also assert that Count XI, the state-based component of the claim, is time-barred. They point out that under Illinois law, the statute of limitations for a breach of oral contract is five years. *See* 735 ILCS 5/13-205. Because the parties entered into the cooperation agreement in 2012, that would mean the claim expired in 2017.

But the statute of limitations is an affirmative defense. *See Edmond v. City of Chicago*, 2018 WL 5994929, at *8 (N.D. Ill. 2018); *see also Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Defendants bear the burden of proof. And if they rely on the pleadings, as they do here, the complaint must contain "everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2008). It's not immediately clear, based on the complaint, that the cooperation was merely an oral agreement subject to the five-year statute of limitations. Hill claims that there was a "written polygraph waiver" that preceded the exam. *See* Pl.'s Resp., at 9 (Dckt. No. 66). The contents of the waiver aren't included in the amended complaint. And the complaint leaves open the possibility that the parties put the contract in writing. That is, Hill never states that the contract was only entered into orally. Perhaps discovery will uncover certain documents related to the agreement. But at this stage, it is too early to dismiss this claim without further development of the record.

The Court therefore denies the Cook County Sheriff Defendants' motion to dismiss Counts I and XI as they relate to the breach of contract claims.

**Conclusion**

One last time, the Court reiterates that it must accept the allegations of the complaint as true at this early stage. For now, the focus is on allegations, not evidence. Under lenient pleading standards, the complaint passes muster, for the most part. Perhaps things will look different at the summary judgment stage, but for now, the complaint largely survives.

The Robbins Defendants and the Cook County Sheriff Defendants' motions to dismiss are granted in part and denied in part. The Court grants Defendants' motions to dismiss Count II as it relates to Hill's 2005 arrest, and Counts IX and X as they relate to Hill's negligent and willful and wanton hiring claims. Otherwise, the motions to dismiss all other counts are denied.

Date:   May 31, 2020

Steven C. Seeger
United States District Judge